United States District Court
Southern District of Texas

**ENTERED**

March 16, 2018

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ELIDA TREVINO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:16-CV-684 |
| | § | |
| NANCY A. BERRYHILL,[1] | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff Elida Trevino filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security Administration's denial of Plaintiff's application for disability benefits. Plaintiff's application alleged that she became disabled due to several medical issues. At the time of the Administrative Law Judge's (ALJ) decision, Plaintiff was 54 years old and about four months from her 55th birthday. The ALJ found that, although she was unable to do her past work, she was not disabled because she still had the ability to perform jobs that exist in significant numbers.

In seeking federal court review, Plaintiff does not challenge the ALJ's factual determination that she was capable of performing other work. Rather, she claims that the ALJ committed legal error by failing to make an explicit finding regarding her age category because, as she approached 55, she reached a "borderline age situation" under the Commissioner's regulations. 20 C.F.R. § 416.963(b). This is an issue that numerous federal courts have struggled to resolve. The Fifth Circuit has not yet addressed it. Other federal circuits are split on

---

[1] Although this action was originally filed against Carolyn W. Colvin, on January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. As such, she is the proper Defendant in this action.

the issue, as are district courts within the Fifth Circuit.  Pending before the Court are Plaintiff's

and the Commissioner's motions for summary judgment.  (Docket Nos. 8, 10.)

After carefully considering the record in light of the deferential standard of review that

applies, the undersigned concludes that Plaintiff's argument lacks merit.  The ALJ's failure to

make an explicit finding regarding Plaintiff's age category was not reversible error under the

circumstances here.  The ALJ was not required to explicitly address Plaintiff's borderline age

situation, and this is not a case where the ALJ applied Plaintiff's age category mechanically.

Rather, after considering her abilities and vocational factors—including age—the ALJ

determined with the aid of a vocational expert that she was capable of performing certain jobs

existing in substantial numbers.  In any event, any procedural error was harmless since Plaintiff

was in fact not disabled, as shown by the ALJ's uncontested findings, and there is no reason to

believe that any error affected the outcome.   Accordingly, for the reasons discussed further

below, it is recommended that summary judgment be granted in favor of the Commissioner.

## I.  BACKGROUND[2]

On January 14, 2013, Plaintiff applied for Supplemental Security Income (SSI) under

section 1614(a)(3)(A) of Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.  (Tr. 236-

41.)  In her application, Plaintiff alleged that she became disabled on May 1, 2005, and she

identified the following conditions that prevented her from working: 1) diabetes; 2) diabetes type

II; 3) high cholesterol; 4) high blood pressure; 5) hypertension; and 6) stomach and voiding

problems.  (Tr. 252.)  Plaintiff later asserted that she was suffering from various mental health

issues, and it was also determined that obesity contributed to her physical impairments.

---

[2] The Commissioner has filed a transcript of the record of the administrative proceedings, which
will be cited as "Tr."  (Docket No. 6.)

Although Plaintiff claimed that she became disabled in 2005, she had previously filed an application for disability benefits, which had been denied after a hearing in a written decision dated November 27, 2012.  (Tr. 248.)  Because that decision had become final, Plaintiff's January 2013 application was construed to claim disability beginning on November 28, 2012.  (Tr. 17.)  Plaintiff's January 2013 application was denied initially and on reconsideration.  (Tr. 114, 126.)  Plaintiff then requested a hearing before an ALJ, which was held on November 7, 2014, in Harlingen, Texas, via video conference.  (Tr. 34–66.)  This was not the same ALJ who had denied her prior application.  After the hearing, the ALJ issued a written decision finding that Plaintiff was not disabled because she retained the ability to perform a limited range of light work and was capable of performing jobs that existed in significant numbers in the national economy.  (Tr. 17–29.)

In considering Plaintiff's challenge to the ALJ's decision, the evidence in the record will be briefly summarized.[3]

A.      Age

Plaintiff was born in May 1960, and she was 52-years-old when she applied for disability benefits.  (Tr. 114, 236.)  On November 7, 2014, when the evidentiary hearing was held, Plaintiff had reached the age of 54 years and about 5 months.  Two and a half months later, on January 29, 2015, the ALJ issued his written decision denying Plaintiff disability benefits.  (Tr. 29.)  At the time of the ALJ's decision, Plaintiff was about four months away from her 55th birthday.

---

[3]  Generally, in Social Security cases the Court must "scrutinize" the record to determine whether the ALJ's decision is supported by substantial evidence.  *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988).  The undersigned has done so here.  Although Plaintiff has not challenged the ALJ's factual findings based on the medical and other evidence in the record, this report will nevertheless provide an overview of the medical evidence in order to put the legal issue in context.

**B.      Education and Work Experience**

Plaintiff completed the eighth grade and she is able to speak, read, and write in English. (Tr. 251, 253.)  In the fifteen years prior to the date that she alleges she became disabled and unable to work, Plaintiff held only one job—and that was for a relatively short time.  Between February 2003 and July 2004, Plaintiff worked as a packer at a poultry farm. (Tr. 253.)  Plaintiff described her duties as "[p]acked chicken all day everyday."  (Tr. 254.)  As a poultry meat packer, Plaintiff would walk and stand eight hours each day.  (*Id.*)  She also frequently lifted boxes weighing between 50-80 pounds.  (*Id.*)

Plaintiff ceased all employment activities on May 1, 2005, which is the same date that she alleges she became unable to work due to various impairments.  (Tr. 253.)

**C.      The Medical Evidence**

To assess Plaintiff's physical problems, the Commissioner arranged for Plaintiff to be examined twice by Dr. Monique Popek: first on December 29, 2011, and again a year and a half later, on May 8, 2013.  (Tr. 316-21, 458-67.)  The first exam was done in connection with Plaintiff's earlier disability application, while the second was ordered in response to Plaintiff's second application at issue here.  Dr. Popek's reports of the two examinations reflect very similar complaints by Plaintiff and objective findings by the doctor.  For example, during the second examination in May 2013, Plaintiff complained of the following conditions: "diabetes, cholesterol, stomach/voiding, hypertension, arthritis, asthma."  (Tr. 458.)  Plaintiff reported engaging in normal daily activities, such as taking care of personal hygiene, driving, cooking, and doing chores.  (Tr. 459.)  Dr. Popek's objective findings suggested that Plaintiff does not have significant physical limitations.  Dr. Popek observed that Plaintiff could get on and off the examining table "without assistance," walked "without a device," could "squat one-fourth of the

4

way and arise from that position," and could "grasp, feel and handle small objects." (Tr. 462.) Plaintiff had "no muscle weakness or atrophy" and normal (5/5) "grip strengths." (Tr. 462-63.) In addition to the other conditions that Plaintiff reported, Dr. Popek found that Plaintiff was obese. (Tr. 463.) During both examinations with Dr. Popek, Plaintiff was "alert and oriented" and had appropriate "emotional affect." (Tr. 320, 462.) Plaintiff reported no psychiatric issues during either exam. (Tr. 218, 461.)

On June 25, 2013, a state agency physician, Dr. Scott Spoor, reviewed Plaintiff's medical records and determined that she had the ability to perform the full range of light work. (Tr. 119-24.) Dr. Spoor concluded that Plaintiff's alleged subjective limitations "cannot reasonably be accepted as consistent with the medical and other evidence in the record." (Tr. 123.) The doctor also noted that Plaintiff "did not indicate having any limiting mental conditions on her [disability] application." (Tr. 118.) On August 5, 2013, another state agency physician, Dr. San-San Yu, agreed with the residual function capacity assessment by Dr. Spoor. (Tr. 127-35.)

Although Plaintiff did not initially assert any mental health issues related to her disability application, she later submitted medical records related to her treatment for symptoms of anxiety, depression, and post-traumatic stress disorder. Plaintiff appears to have first complained of mental health problems in the fall of 2013. On May 22, 2014, Plaintiff underwent a consultative psychological evaluation, performed by Gayle D. Monnig, Psy.D. (Tr. 471-79.) Plaintiff stated that she has post-traumatic stress disorder related to a motor vehicle/pedestrian accident that had occurred some years earlier. (Tr. 475.) Dr. Monnig diagnosed Plaintiff with post-traumatic stress disorder, major depressive disorder, generalized anxiety disorder, panic disorder, agoraphobia, and social anxiety disorder. (Tr. 478.)

Plaintiff was treated for mental health issues in July and August 2014.  (Tr. 547-49, 555, 557-58.)  On September 4, 2014, Plaintiff reported severe mental health problems, and she agreed to be admitted for treatment at South Texas Behavioral Health Center.  (Tr. 568.)  Upon discharge a week later, Plaintiff felt "great," her depression had improved, and she denied experiencing any suicidal ideation or psychosis.  (Tr. 593.)  Later, Plaintiff again reported mental health issues, although she admitted that she sometimes forgets to take her medications.  (Tr. 695.)

## D.    The Evidentiary Hearing

The evidentiary hearing was held on November 7, 2014.  (Tr. 34–66.)  Three witnesses testified: Plaintiff, who was represented by an attorney; Dr. Nancy M. Tarrand, the medical expert; and Charles R. Poor, the vocational expert.  (Tr. 35.)

Plaintiff testified in response to questions by the ALJ and her attorney.  The ALJ began by addressing Plaintiff's age, which she stated simply as, "fifty-four."  (Tr. 40.)  Plaintiff completed the eighth grade and never obtained a GED.  (Tr. 42.)  As to her prior work history, Plaintiff last worked in Maryland in 2005 at a "chicken plant" where she "pack[ed] the chicken." (*Id.*)

Plaintiff described her physical and mental health problems.  (Tr. 43-61.)  According to Plaintiff, she can only sit for an hour at a time and can only lift "about five pounds" with one hand.  (Tr. 54.)  Plaintiff's anxiety also causes her right hand to shake.  (*Id.*)  Plaintiff stated that her knees hurt when she walks and that she can only stand for 30 to 45 minutes at a time.  (Tr. 55.)  When she feels up to it, Plaintiff is able to drive a car, mop the floor, clean the house, and cook food.  (Tr. 56.)

Dr. Tarrand is a board-certified psychiatrist.  She testified about Plaintiff's mental health issues and their effect on Plaintiff's ability to work.  Dr. Tarrand summarized the medical evidence relating to Plaintiff's mental health treatment.  (Tr. 47-49.)  Based on Plaintiff's mental health conditions, Dr. Tarrand concluded that Plaintiff would not "meet or equal any listing" relating to mental impairments.  (Tr. 50.)

As to Plaintiff's "functional abilities," Dr. Tarrand testified that "limiting her to only occasional incidental public contact that's not required as part of her job duties would make sense."  (*Id.*)  Although Plaintiff "could interact with supervisors and coworkers, [ ] she might not do well as part of a team that has to function in close coordination."  (*Id.*)  Plaintiff also "could certainly do simple job instructions," but probably not complex instructions.  (*Id.*)

The vocational expert (VE), Mr. Poor, testified that he had reviewed the records in Plaintiff's file.  (Tr. 62.)  He classified Plaintiff's her prior work ("poultry farm laborer") as unskilled at the medium exertional level.  (*Id.*)  The ALJ asked the VE whether Plaintiff could perform any of her prior work, assuming the following profile and functional limitations: "an individual closely approaching advanced age"; who has a limited education but is literate; who can lift 10 pounds regularly and 20 pounds occasionally; who can stand/sit six hours in an eight-hour workday; and who has "very little exertional limitations."  (*Id.*)  In addition, the ALJ asked the VE to assume the following mental abilities and limitations: Plaintiff can get along with others; understand simple instructions; concentrate and perform simple tasks; respond and adapt to workplace changes and supervision; and only have occasional contact with the public.  (Tr. 63-64.)  The VE stated that, with those limitations, Plaintiff would not be able to perform her prior work.  (Tr. 64.)

When asked if there was other work she could co, the VE stated that "[a]n individual with the profile detailed in [the ALJ's] hypothetical could do a relatively wide range of different job titles that exist in significant numbers regionally and nationally." (Tr. 64.)  As examples of jobs that Plaintiff could perform the VE listed the following:

> 1)   Housekeeping Cleaner (light, unskilled) – representing approximately 917,000 jobs in the national economy and 36,000 in Texas;

> 2)   Laundry Classifier (light, unskilled) – representing approximately 126,000 jobs in the national economy and 15,000 in Texas; and

> 3)   Cafeteria Attendant (light, unskilled) – representing approximately 115,000 jobs in the national economy and 13,000 in Texas.

Counsel for Plaintiff did not cross-examine the VE.  During the entire hearing, Plaintiff's counsel did not refer to Plaintiff's age and did not suggest that the ALJ should consider her in a borderline age situation.

## E.   The ALJ's Decision

On January 29, 2014, the ALJ issued a 13-page, single-spaced written decision.  He made detailed findings in applying the five-step method for evaluating disability claims.[4]  (Tr. 17-29.)

The ALJ first found (at Step One) that Plaintiff had not performed substantial gainful activity since the date of her latest disability application.  (Tr. 19.)  In considering the severity of Plaintiff's impairments (Step Two), the ALJ determined that Plaintiff had the following "severe" medical impairments: depression, panic disorder, and obesity.[5]  (Tr. 20.)  The ALJ also found that these medical impairments were not severe enough to meet or medically equal one of the

---

[4]  The five-step process for determining whether a plaintiff is eligible for benefits will be explained further in the Standard of Review section of this report, *infra* Part II.A.

[5]  The ALJ also determined that Plaintiff "has multiple non-severe impairments," including diabetes mellitus, asthma, general musculoskeletal discomfort, and hypertension.  (Tr. 20.)  The ALJ found that "[t]here is no objective evidence that the claimant has any functional limitations related to these impairments."  (*Id.*)

listed impairments in the regulations (Step Three).  (Tr. 21-22.)  In reaching this conclusion, the ALJ provided an overview of Plaintiff's medical records relating to those conditions.  (Tr. 20-22.)

Next, the ALJ assessed Plaintiff's residual functional capacity (RFC) to do work-related activities.  (Tr. 22.)  In doing so, the ALJ provided a detailed (if not exhaustive) summary of the evidence in the record, including the medical records, expert opinions, Plaintiff's subjective complaints, and her daily activities.  (Tr. 23-27.)

In analyzing Plaintiff's subjective symptoms in accordance with the regulations, the ALJ determined that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  (Tr. 23.)  The ALJ pointed out that Plaintiff has a history of being "non-compliant with treatment in multiple ways."  (Tr. 25.)  The medical records showed that when Plaintiff "is compliant with her psychotropic medications, her symptoms are effectively managed and controlled."  (*Id.*)

After assessing the medical opinions and other evidence in the record, the ALJ determined that Plaintiff had the ability to perform work at the light exertional level; specifically, the ALJ found that Plaintiff's RFC included the following:

> She could lift and carry 20 pounds occasionally and 10 pounds frequently.  She could sit, stand, and walk for 6 hours of 8 hours each for a full 8-hour day.  Her ability to push/pull and perform fine and gross manipulation is unlimited.  She could occasionally climb stairs but she could not climb ladders, ropes, scaffolds or run.  She could occasionally bend, stoop, crouch, crawl, balance, twist and squat.  She can have only occasional exposure to dust, fumes, gases, and chemicals.  She gets along with others.  She understands simple instructions, concentrates and performs simple tasks, responds and adapts to workplace changes and supervision but in an occasional public/employee contact setting.

(Tr. 22.)  The ALJ noted that this RFC "more than considers [Plaintiff's] symptoms relating to her depression and major depressive disorder."  (Tr. 26.)

The ALJ then addressed (at Step Four) whether Plaintiff was capable of performing any of her past relevant work. (Tr. 28.) Because Plaintiff's past work as a poultry farm laborer required abilities above the light exertional level, the ALJ found that she "could not perform her past relevant work." (*Id*.) However, "considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id*.) The ALJ made this finding (at Step Five) "[b]ased on the testimony of the vocational expert" in light of Plaintiff's "age, education, work experience, and residual functional capacity." (Tr. 29.)

Because Plaintiff is capable of performing other work, the ALJ concluded that she is not disabled. (Tr. 29.) On the date of the ALJ's decision, Plaintiff was about four months away from her 55th birthday.

**F.      Procedural History**

Plaintiff sought administrative review of the ALJ's decision. (Tr. 12.) In doing so, Plaintiff's counsel did not raise any issue with regard to Plaintiff's age. The Appeals Council concluded that there was no basis for challenging the decision, rendering it the Commissioner's final decision for purposes of judicial review. (Tr. 1-3.) The instant action followed in which Plaintiff seeks review of the decision pursuant to 42 U.S.C. § 405(g). (Docket No. 1.) The parties' motions for summary judgment are pending. (Docket Nos. 8, 10.) Those motions will be analyzed in light of the applicable standard of review.

## II.  ANALYSIS

**A.      Standard of Review**

To qualify for benefits under the Social Security Act (the "Act"), Plaintiff bears the burden of proving that she is disabled. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be

considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *see also Fraga v. Bowen*, 810 F.3d 1296, 1301 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983)).  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at §§ 423(d)(3), 1382c(a)(3)(D).

To determine whether a claimant is disabled within the meaning of the Act, the Commissioner applies the following five-step inquiry:

(1)    whether the claimant is currently working in substantial gainful employment;

(2)    whether the claimant suffers from a severe impairment;

(3)    whether the claimant's severe impairment is sufficient under the pertinent regulations to support a finding of disability;

(4)    whether the claimant is capable of returning to his or her past relevant work; and, if not,

(5)    whether the impairment prevents the claimant from performing certain other types of employment.

*See* 20 C.F.R. §§ 404.1520, 416.920.

A finding that a claimant is disabled or not disabled at any point in the five-step inquiry is conclusive and terminates the analysis.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).  At Steps One through Four, the burden of proof rests upon the claimant to show that she is disabled.

If the claimant satisfies this responsibility, the burden then shifts to the Commissioner at Step Five of the process to show that there is other gainful employment that the claimant is capable of performing despite her existing impairments. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Although the burden is initially on the Commissioner at Step Five, once the Commissioner makes a showing that the claimant can perform other work, the burden shifts back to the claimant to rebut the finding that there are jobs that exist in significant numbers that the claimant could perform. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Throughout the process, the ultimate burden of establishing disability remains with the claimant." *Strempel v. Astrue*, 299 F. App'x 434, 437 (5th Cir. 2008) (citing *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983)).

In this case, the ALJ found at Step Four that, while Plaintiff was able to perform light work, she was unable to perform any of her past relevant work. (Tr. 28.) At Step Five, the ALJ found, based on the vocational expert's testimony, that Plaintiff was not disabled because she could perform jobs existing in significant numbers in the national economy. (Tr. 28-29.) In light of this showing that Plaintiff could perform other work, the ultimate burden of proof remained with the Plaintiff.

A federal court's review of the Commissioner's final decision is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Masterson*, 309 F.3d at 272. Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Here, Plaintiff does not argue that the ALJ's RFC finding lacks substantial evidence. Instead, as discussed below, Plaintiff contends that the ALJ committed legal error.

B.      **Issue**

In seeking review of the Commissioner's denial of benefits, Plaintiff raises one issue. Plaintiff contends that, although she was only "slightly more than three months away from her 55th birthday on the date of the ALJ's decision," the ALJ failed to "acknowledge or discuss" her "borderline age" situation as required by 20 C.F.R. § 416.963(b).   (Docket No. 9, at 1, 4.) Plaintiff seeks remand for a finding on her age category because she hopes it will result in the conclusion that she is presumed disabled by application of the Medical-Vocational Guidelines (Grid Rules).   20 C.F.R. Part 404, Subpt. P, App.2.   As Plaintiff explains, given her residual functional capacity (RFC), education, and work experience, Grid Rule 202.01 directs that she be found disabled at the point she became an individual of advanced age.   (Docket No. 9, at 5-7.) The ALJ committed legal error by "improperly applying the Grid Rules in a mechanical fashion and failing to consider Plaintiff's significant additional vocational adversities."   (*Id*. at 4.)

The Commissioner contends that the denial of benefits should be affirmed because "the ALJ has discretion in determining when an age situation is borderline."   (Docket No. 11, at 5.) In addition, the Commissioner argues that "the ALJ did not stop with the Grids"; rather, he "considered the testimony of a vocational expert" in assessing whether there were jobs that Plaintff could perform, given her RFC.   (*Id.*)

The issue raised by the parties will be addressed in the context of the standard of review that applies in social security cases (as discussed above).

C.      **Plaintiff's Borderline Age Situation**

Where, as here, the disability analysis reaches Step Five, an ALJ must consider a claimant's RFC along with vocational factors, such as age, in determining whether she is able to do other work.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also McQueen v. Apfel*,

168 F.3d 152, 154 (5th Cir. 1999).   The Grid Rules were promulgated to "improve both the uniformity and efficiency" of the Step-Five determination.  *Heckler v. Campbell*, 461 U.S. 458, 461 (1983).  The Supreme Court has described the purpose of the Grid Rules as follows:

> These guidelines relieve the Secretary of the need to rely on vocational experts by establishing through rulemaking the types and numbers of jobs that exist in the national economy. They consist of a matrix of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.   Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform.  If such work exists, the claimant is not considered disabled.

*Id*. at 461-62 (footnotes omitted).   In other words, where the characteristics of the claimant correspond exactly to the criteria of one of the rules, "the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

In applying the Grid Rules, a claimant's age is considered by reference to one of three categories.  *See* 20 C.F.R. §§ 416.963.  As relevant here, the regulations describe the following age categories:

> 1)      Person closely approaching advanced age.  If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.

> 2)      Person of Advanced age.  We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work.  We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older).

20 C.F.R. § 416.963(d) & (e).

In attempting to lessen the arbitrariness of the distinction between the age categories, the regulations provide for the following procedure in a "borderline situation":

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. § 416.963(b). Thus, a "borderline situation" exists where (1) the claimant is "within a few days to a few months" of the next older age category; and (2) applying the Grid Rules for the older age category would result in a determination that the claimant is disabled. *Id*. When those two conditions are met, the ALJ must "consider" whether the next higher age category should be used. *Id*.

Here, Plaintiff will be assumed to be in a "borderline situation." First, she was about four months away from turning 55 at the time of the ALJ's decision.[6] The Commissioner cites the Fifth Circuit's decision in *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1998), and other cases for the proposition that the ALJ has discretion to determine when an age situation is borderline. (Docket No. 11, at 5.) While it is certainly true that the ALJ has discretion to ultimately determine which age category a particular claimant falls under, a number of courts have found that claimants may be considered in a "borderline situation" where they are up to six months away from a birthday that would place them in the next older category. *See Jackson v. Colvin*, 240 F.Supp.3d 593, 600 (E.D. Tex. 2017) (observing that "a growing number of courts appear to hold that a claimant within six (6) months of an older age category present a borderline age situation") (citing cases). As to the second requirement for borderline age consideration, the

---

[6] Plaintiff describes her age as "slightly more than three months away from her 55th birthday on the date of the ALJ's decision." (Docket No. 9, at 1.) The Commissioner describes her age as "within four months of turning 55." (Docket No. 11, at 5.) For purposes of the age issue here, it is not material whether Plaintiff was three months or four months away from her 55th birthday. This report will refer to her birthday as about four months from the date of the ALJ's decision.

Commissioner does not appear to dispute that when Plaintiff turned 55, she would have been found disabled based on Grid Rule 202.01. *See* 20 C.F.R. Part 404, Subpt. P, App. 2 § 202.01.

Because Plaintiff was in a "borderline situation," the ALJ was required to "consider whether to use the older age category after evaluating the overall impact of all the factors of [her] case." 20 C.F.R. § 416.963(b). In his written decision, the ALJ did not specifically address Plaintiff's borderline age situation. Rather, after finding that Plaintiff could not perform any of her past work (at Step Four), the ALJ relied on the opinion of the vocational expert (VE) that there are jobs that exist in significant numbers that Plaintiff can perform, considering her "age, education, work experience, and residual functional capacity." (Tr. 28.)

Plaintiff argues that the ALJ erred in failing to expressly acknowledge that Plaintiff was in a borderline age situation and to "provide evidence" in his decision that he considered whether to apply the higher age category. (Docket No. 9, at 4-5.) According to Plaintiff's reading of § 416.963(b), the ALJ thus erred by in "applying the grids mechanically." (*Id*. at 7.)

Federal courts across the country have been hopelessly split on whether an ALJ must expressly acknowledge in his decision that he considered a claimant's borderline situation. A number of district courts in the Fifth Circuit have recognized and discussed this split of authority. *See, e.g.*, *Jackson*, 240 F.Supp.3d at 601-02; *Manning v. Colvin*, 2014 WL 266417, at *6-7 (N.D. Tex. Jan. 24, 2014); *Ware v. Colvin*, 2014 WL 4999276, at *7-9 (W.D. Tex. Oct. 7, 2014). For example, in *Jackson* the court summarized the circuit split as follows:

> The Circuit Courts of Appeals and courts within the Fifth Circuit are split as to whether and what extent the ALJ's decision must explicitly acknowledge the borderline age situation. *See Manning*, 2014 WL 266417, at *6. The Sixth, Ninth, and Eleventh Circuits hold that an ALJ is not required to explain in his written decision whether he considered the borderline age situation. *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399–403 (6th Cir. 2008) (nothing in the relevant statute or governing regulations require an ALJ to address the claimant's borderline age situation in his opinion); *Lockwood v. Comm'r of Soc. Sec. Admin.*,

616 F.3d 1068, 1071–72 & n.4 (9th Cir. 2010); *Miller v. Comm'r of Soc. Sec.*, 241 Fed.Appx. 631, 635–36 (11th Cir. 2007) (per curiam). However, the Third, Eighth, and Tenth Circuits have taken the opposite view, holding that the ALJ is required to explain in his written decision whether he considered the borderline age situation. *See Daniels v. Apfel*, 154 F.3d 1129, 1134–36 (10th Cir. 1998) (placing a claimant in an age category is a factual finding that must be supported by substantial evidence, and without it being mentioned in the ALJ's written decision, a reviewing court cannot meaningfully analyze the ruling under the substantial evidence standard); *Phillips v. Astrue*, 671 F.3d 699, 706– 07 (8th Cir. 2012); *Lucas v. Barnhart*, 194 Fed.Appx. 204, 208 ([3rd] Cir. 2006).

*Jackson*, 240 F.Supp.3d at 601-02.  The Fifth Circuit does not appear to have addressed this specific issue.[7]

The undersigned believes that the better rule is reflected by the Sixth Circuit's decision in *Bowie*, which held that "§ 1563(b) does not impose a *per se* procedural requirement to address borderline age categorization explicitly in every borderline case."  539 F.3d at 399.  In reaching this conclusion, the *Bowie* court reasoned:

> Although ALJs are obligated by [20 C.F.R. § 404.1563(b)] not to apply the age categories mechanically and to consider whether use of an older age category would be appropriate in a borderline case, nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination. Rather, the regulation merely promises claimants that the Administration will "consider" veering from the chronological-age default in borderline situations.

*Bowie*, 539 F.3d at 399.

In addition to the plain language of § 404.1563(b), the Sixth Circuit found additional support for its conclusion in the then-applicable HALLEX[8] provision addressing borderline age situations:

---

[7] The Fifth Circuit has found that an ALJ has considerable discretion in determining if a particular claimant is in a borderline situation.  *Harrell v. Bowen*, 862 F.2d 471 (5th Cir. 1988); *see also Stanridge-Salazar v. Massanari*, 254 F.3d 70, at *1 (5th Cir. 2001) ("the Commissioner has significant discretion to determine when a situation is borderline").

[8]  HALLEX refers to the Commissioner's "Hearings, Appeals and Litigation Law Manual."  As the Seventh Circuit has explained:

While not binding on this court, the procedural guidance to the staff and adjudicators of the Office of Hearings and Appeals set forth in the HALLEX bolsters this interpretation. In section II–5–3–2, the Associate Commissioner of Hearings and Appeals provided an Appeals Council interpretation of 20 C.F.R. § 404.1563 entitled "Application of the Medical–Vocational Guidelines in Borderline Age Situations," which interpretation directs ALJs to consider whether the claimant has presented "additional vocational adversities" in determining whether to veer from a claimant's chronological age in a borderline situation. HALLEX II–5–3–2. Appeals Council interpretations are "designed to surface and resolve issues arising from gaps in policy or unclear statements of policy, promote greater consistency and uniformity in applying policy throughout the adjudicatory process, and establish precedents at the hearings and appeals levels of adjudication." *Id.* I–1–0–2. With respect to borderline age situations, the Council advised:

> Absent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age—even when the time period is only a few days. *The adjudicator need not explain his or her use of the claimant's chronological age.*

*Id.* (emphasis added). Moreover, the Appeals Council appears to anticipate that ALJs will not always address the issue of age categorization in cases involving borderline age situations, and explains that in such situations, the Council will typically deny review unless there is a basis in the record for using a higher age category:

> The Appeals Council will ordinarily deny review, assuming there is no other basis for granting review, when a borderline age situation exists, *the ALJ's decision does not address the issue,* and the Appeals Council does not find sufficient basis in the record for using the higher age category.

*Id.* (emphasis added). Thus, not only is there no procedural requirement apparent on the face of 20 C.F.R. § 404.1563(b) to address age categorization explicitly in borderline situations, the Appeals Council also does not presume such a requirement.

---

HALLEX is a Social Security Administration policy manual written to convey "guiding principles, procedural guidance and information to the Office of Hearings and Appeals staff." *HALLEX,* Chapt. I-1-001. HALLEX "also defines procedures for carrying out policy and provides guidance for processing and adjudicating claims" at the Appeals Council. *Id*
*Cromer v. Apfel*, No. 00-1858, 2000 WL 1544778 *2 (7th Cir. Oct. 16, 2000).

*Bowie*, 539 F.3d at 399–400 (emphasis in original).

This HALLEX provision was also in effect at the time of the ALJ's decision in the instant case.  While recognizing that HALLEX does not carry the authority of law, the Fifth Circuit has nevertheless determined that it is entitled to considerable weight.[9]  *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).    "The Secretary's interpretations of his regulations deserve[] considerable deference in the absence of an obvious inconsistency between the interpretation and the language of the regulation in question."  *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988) (citing *Cieutat v. Bowen,* 824 F.2d 348, 351–53 (5th Cir.1987)).  Here, there is no inconsistency between the language of § 404.1563(b) (requiring that borderline age be "considered") and the HALLEX interpretation (that ALJs need not explain their decision to use a claimant's chronological age).

A number of other courts have taken a different view, holding that ALJs must explain in their written decisions whether they considered the borderline age situation.[10]  In some of those

---

[9] In *Newton*, the Fifth Circuit stated:
> While HALLEX does not carry the authority of law, this court has held that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *See Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir.1981). If prejudice results from a violation, the result cannot stand. *Id.*

209 F.3d at 459.

[10] One thing perhaps all courts can agree on is that it is certainly a better practice (particularly in light of the divided case law) for ALJs to explain in their decisions whether they considered the borderline age situation.  In reviewing the numerous federal cases struggling with this issue, it is disheartening to consider the amount of time and resources that could have been saved had that practice been followed.  On a positive note, the HALLEX provision regarding the borderline age situation has recently been amended.  As of March 25, 2016 (long after the decision at issue here), "the Appeals Council has 'removed HALLEX II-5-3-2 in its entirety [and] incorporated instructions for handling borderline age issues in new HALLEX I-2-2-42 and  I-3-3-25.'" *Huigens v. Soc. Sec. Admin., Comm'r*, No. 17-11682, 2017 WL 6311683, at *4 n.2 (11th Cir. Dec. 11, 2017) (citing HALLEX Transmittal No. II-5-11); *see* HALLEX Transmittal No. II-5-11 (March 25, 2016), https://www.ssa.gov/OP_Home/hallex/TS/tsii-5-11.html (last visited March

cases, the ALJ had used the claimant's age category to find the claimant not disabled based solely on the Grid Rules.  *See, e.g., Daniels*, 154 F.3d at 1131 n.3 (the ALJ "relied solely on the grids in finding [the claimant] disabled"); *Kane v. Heckler*, 776 F.2d 1130, 1132-33 (3d Cir. 1985) (ALJ applied a Grid Rule that "requires a finding of not disabled for such a claimant"). Under those circumstances, the courts found that the ALJs had mechanically applied the age categories contrary to the requirements of the regulation.  *Daniels*, 154 F.3d at 1136 ("§ 404.1563(b) prohibits the Commissioner from mechanically applying the age categories in relying on the grids to determine whether a claimant is disabled");  *Kane*, 776 F.2d at 1134 ("Where a procrustean application of the grids results in a case that, but for the passage of a few days, would be decided differently, such an application would appear to be inappropriate."); *see also Phillips,* 671 F.3d at 699, 701 (8th Cir. 2012) (remanding based on the absence of finding regarding borderline age category in a case where the Social Security Appeals Council applied a Grid Rule that directed a finding of not disabled).

In contrast to those cases, here the ALJ did not rely solely on the Grid Rules in finding that Plaintiff was not disabled.  The ALJ explained that, in determining (at Step Five) whether Plaintiff could perform other work, he must consider her "residual functional capacity, age,

---

14, 2018).  New HALLEX I-2-2-42 C(5) now provides: "The ALJ will explain in the decision that he or she considered the borderline age situation, state whether he or she applied the higher age category or the chronological age, and note the specific factor(s) he or she considered." 2016 WL 1167001, at *3.  Similarly, new HALLEX I-3-3-25 provides that the Appeals Council must add the following language to a decision denying review in cases where an ALJ did not expressly address a borderline situation: "We considered the borderline age situation in this case, and we found that the factors in the record do not support application of the higher age category."  2016 WL 1167002, at *1.  With this clear guidance to ALJs and the Appeals Council in cases involving the borderline age situation, the issue addressed in this report (and in many, many other cases) will hopefully fade away.  As will be discussed, however, the new HALLEX provisions would likely not change the result in this case.  *See infra* n.13.

education, and work experience in conjunction with the Medical-Vocational Guidelines."  (Tr. 28.)  Grid Rule 202.10 applies to a person "closely approaching advanced age," who has a "limited or less" education, and with unskilled work experience (or no work experience).  20 C.F.R. Pt. 404, Subpt. P, App. 2, Table No. 2, Rule 202.10.  As the ALJ noted, if Plaintiff's characteristics corresponded to Grid Rule 202.10, the guidelines direct a finding of not disabled. (Tr. 28.)

However, because the ALJ found that Plaintiff could not perform the requirements for the full range of light work, Grid Rule 202.10 did not direct a decision.  Accordingly, the ALJ enlisted the assistance of a vocational expert (VE).[11]  (Tr. 28-29.)  The ALJ relied on the VE to determine "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity."  (Tr. 29.)  The vocational expert—who had heard Plaintiff's testimony and reviewed the documents in the record—opined that there were light/unskilled jobs (existing in significant numbers) that Plaintiff could perform, taking into account her age and the other vocational factors.  (Tr. 29, 64-65.)

Thus, in this case the ALJ did not "mechanically" apply Plaintiff's age category to find her not disabled based solely on the Grid Rules.  *See* 20 C.F.R. § 416.963(b).  To the contrary, the ALJ found that Plaintiff was in fact not disabled because she was capable of performing other jobs, based on all of the vocational factors—including her age.

A number of courts have agreed that, where (as here) the ALJ has relied upon the testimony of a VE, the ALJ did not err in failing to make specific findings on Plaintiff's

---

[11]  Where a claimant's characteristics do not "coincide exactly" with a Grid Rule, the ALJ must introduce "expert vocational testimony" to determine whether "there are jobs in the national economy that [the claimant] can perform despite her limitations."  *Lawler v. Heckler*, 761 F.2d 195, 197-98 (5th Cir. 1985); *see also Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (same).  That is what the ALJ did here.

borderline age status.  *See Lockwood*, 616 F.3d at 1071-72 (holding that "the ALJ did not 'apply the age categories mechanically' because the ALJ . . . relied on the testimony of a vocation expert"); *Miller*, 241 F. App'x at 635–36 (concluding that "the ALJ did not rely exclusively on the grids" where the ALJ relied on the testimony of a VE); *Flores v. Astrue*, No. 09-cv-214, 2010 WL 3858173, at *3-4 (N.D. Tex. Aug. 30, 2010) (holding that the ALJ did not err even though he "did not provide an analysis as to whether the older age category should apply"; the fact that the ALJ "elicited testimony from a vocational expert" showed that "he did not rely mechanically upon the Grid Rules"); *Hayes v. Astrue*, No. 3:07-CV-137,  2009 WL 481473, at *2-3 (M.D. Ga. Feb. 23, 2009) (finding no error where "the ALJ relied upon the testimony of a vocational expert, and did not mechanistically apply the grids").   In particular, two cases decided in this District have reached the same conclusion in addressing the borderline age issue.  *Wishard v. Colvin*, No. 2:16-CV-382, 2017 WL 4570748, at *5 (S.D. Tex. Sept. 25, 2017) (concluding that "Plaintiff's characterization of the ALJ decision as reliant on the guidelines is incorrect as the ALJ explicitly found the Plaintiff capable of making a successful adjustment to other work based on the testimony of the VE"), report and recommendation adopted, No. 2:16-CV-382, 2017 WL 4551376 (S.D. Tex. Oct. 12, 2017); *Fosha v. Barnhart*, 372 F. Supp. 2d 948, 957 & n.8 (S.D. Tex. 2005) (rejecting the argument "that the VE's testimony should be disregarded and the grid ought to govern as a matter of law" and finding cases from the Tenth Circuit distinguishable because "the ALJ properly questioned and relied on VE testimony").

However, a number of other courts—possibly a majority—disagree, holding that an ALJ must expressly identify a borderline age situation and make specific findings on that issue, even in cases where the ALJ has relied on VE testimony.  *See, e.g.*, *Campbell v. Colvin*, No. 1:15-CV-165, 2015 WL 8484457, at *3 (M.D.N.C. Dec. 9, 2015) (noting that "significant case law" and

"many district courts in the Fourth Circuit have required the ALJ to provide some analysis and make express findings in borderline age situations") (citing cases).

Some district courts in the Fifth Circuit have taken a somewhat modified approach, as reflected by the well-written and well-reasoned opinions in *Jackson*, *Ware*, and *Manning*, which are cited by Plaintiff.  As the court explained in *Jackson*:

> District courts in the Fifth Circuit have generally adopted a middle ground. They have rejected a per se requirement that the ALJ must always explain in his written decision whether he considered the borderline age issue, but they have held in cases where there is no explanation of the issue and there is an indication that the claimant might be considered disabled under a different guidelines rule, a remand is proper. *See Manning*, 2014 WL 266417, at *6.

*Jackson*, 240 F.Supp.3d at 602; *see also Manning*, 2014 WL 266417, at *6 (discussing other "middle ground" cases).  Applying this "middle ground," the *Jackson* court found that remand was necessary because the ALJ's "references to Plaintiff's age, in combination with the ALJ's lack of explanation when classifying Plaintiff, are insufficient to demonstrate the ALJ recognized or considered Plaintiff's borderline age situation as required by the regulations." *Id*.  The courts in *Ware* and *Manning* likewise found that remand was required for similar reasons.  For example, in *Manning* the court rejected the proposition that in every case involving a borderline situation, "there is a per se requirement that an ALJ explain in his written decision whether he considered the borderline age issue."  2014 WL 266417, at *7.  Nevertheless, in the circumstances of that case, the court found that "a remand is necessary because the court is unable to determine from the record whether the ALJ considered the borderline age issue, and, without this explanation, it cannot conclude that the ALJ's decision is supported by substantial evidence."[12]  *Id*.; *see also Ware*, 2014 WL 4999276, at *10 (holding that, although the ALJ had

---

[12] Although the courts adopting a "middle ground" approach eschew a per se requirement that the ALJ must always acknowledge the borderline age issue, it is unclear from the rulings in those

referred to the claimant's birth date and her age as of the onset date, "there is not sufficient evidence for the Court to conclude that the ALJ did consider the borderline age situation and whether the older age category would be more appropriate").  While the holding in *Jackson* may be distinguishable from the instant case since it appears that the ALJ had relied solely on the Grid Rules to find the claimant not disabled, the rulings in both *Manning* and *Ware* involved circumstances where the ALJ had relied on VE testimony in determining that the claimant was not disabled at their chronological age category.  *See Jackson*, 240 F.Supp.3d at 598; *Ware*, 2014 WL 4999276, at *10-11;*Manning*, 2014 WL 266417, at *1.

The undersigned respectfully disagrees with the rulings in cases such as *Manning* and *Ware* and agrees instead with the rulings in *Wishard* and *Fosha* from this District, as well as the circuit court rulings in *Bowie*, *Lockwood*, and *Miller*.  There are two primary reasons.  First, as the Sixth Circuit pointed out in *Bowie* (as discussed above), there is nothing in the language of the borderline age regulation, 20 C.F.R. § 1563(b), or in the Commissioner's internal policies in effect at the time (HALLEX II-5-3-2), to require an ALJ to expressly address the borderline age situation in his decision.[13]  Thus, in failing to make such an express finding in this case, ALJ did not commit any legal or procedural error.

---

cases under what circumstances an ALJ would not be required to specifically state whether he considered that issue.

[13] As noted, *see supra* n.10, the amended HALLEX provisions now in effect require ALJs to "explain in the decision that he or she considered the borderline age situation" and "note the specific factor(s) he or she considered."  HALLEX I-2-2-42(C)(5), 2016 WL 1167001, at *3 (effective March 25, 2016).  However, even if this new HALLEX provision had been in effect at the time of the ALJ's decision in this case (which it was not), applying the new HALLEX would not help Plaintiff under the circumstances of this case.  The amended HALLEX suggests that the borderline age situation should not be applied at all where, as here, the Grid Rules do not dictate a denial of benefits using the claimant's chronological age.  The new HALLEX instructions for identifying a borderline age situation require an ALJ to first determine whether "application of a claimant's chronological age *results in* a decision that the claimant is not disabled" before determining whether the claimant is within a few months of the next higher age and whether "the

Second, there is no adequate justification for a judicially-created requirement that an ALJ make explicit acknowledgement of the borderline age situation where, as here, substantial evidence supports the ALJ's decision that the claimant is not disabled.  The ALJ determined that

---

higher age category [will] *result in* a decision of 'disabled' instead of 'not disabled.'"  HALLEX I-2-2-42(B), *id*. at *1 (emphasis added).  This suggests that the Grid Rules must direct a finding of not disabled at the claimant's chronological age for the borderline age situation to arise. Otherwise, to determine whether or not the claimant is disabled at her chronological age, the ALJ would need to obtain the opinion of a vocational expert in determining whether or not she could perform existing jobs in light of her age, residual functional capacity, education, and work experience.  *See* 20 C.F.R. § 416.920(g) (describing the Step Five disability analysis); *Lawler v. Heckler*, 761 F.2d 195, 197-98 (5th Cir. 1985) (where a claimant's characteristics do not "coincide exactly" with a Grid Rule, the ALJ must introduce "expert vocational testimony" to determine whether "there are jobs in the national economy that [the claimant] can perform despite her limitations").

This conclusion is further confirmed by the borderline age policy instructions in the amended Program Operations Manual System (POMS).  POMS DI 25015.006 (effective July 6, 2017), https://secure.ssa.gov/poms.nsf/lnx/0425015006 (last visited March 15, 2018).  Like the amended HALLEX, the POMS borderline age policy applies only where "using the chronological age results in a denial."  *Id*. at part A.  All of the examples given as guidance in applying the borderline age analysis reflect circumstances in which the Grid Rule at the claimant's chronological age dictated a denial of benefits.  *Id*. at parts D, E, and F.  The guidance in both HALLEX and POMS suggests that the § 1563(b) borderline age analysis should be applied only in circumstances in which the Grid Rules dictate a finding of not disabled at the claimant's chronological age.  This is a sensible reading of § 1563(b).  To read § 1563(b) to require the borderline age analysis where the Grid Rules do not dictate an unfavorable result at the claimant's current age would yield an inefficient and arguably unreliable result.  The ALJ would be required to obtain the opinion of a vocational expert and to conduct the Step Five analysis, only to then ignore that determination if it results in a finding that the claimant was indeed capable of performing existing jobs given her age and other circumstances.   An alternative approach—that would be equally unsatisfactory and likely more unreliable—would be for the ALJ to apply the borderline age analysis without first applying the Grid Rules using the claimant's current age.  This alternative would also run afoul of the HALLEX requirement that "[i]f using the claimant's chronological age will result in a favorable decision, an [ALJ] will not use the higher age category solely because it will result in a more favorable onset date, determination, or decision for the claimant."  HALLEX I-2-2-42(A), 2016 WL 1167001, at *1 ("NOTE").  The Grid Rule must be applied before it can be determined to be favorable or unfavorable.  Perhaps perceiving such issues (long before the new HALLEX and POMS borderline age policies became effective), the Eleventh Circuit explained in *Miller* that, where the ALJ relied on a VE's testimony to establish job availability, "the ALJ's decision was not made in reliance upon the grids and, thus, a determination of whether [the claimant] was a person of advanced age or closely approaching advanced age was not necessary."  241 F. App'x at 635.

Plaintiff was not disabled beginning from the date of her application (November 28, 2012) through the date of the decision (January 29, 2015). (Tr. 17.) Plaintiff does not suggest that the ALJ's residual functional capacity finding lacks substantial evidence—nor could she. The ALJ's detailed written decision shows that he carefully considered the evidence. (Tr. 19-29.) The record reflects that the ALJ's RFC determination is supported by substantial evidence, including medical records, opinions by multiple medical experts, and the ALJ's credibility assessment regarding Plaintiff's subjective symptoms.

Because the ALJ found that Plaintiff could not perform her past work and because the Grid Rules did not dictate a finding of not disabled, the ALJ properly obtained evidence from a vocational expert. *See supra* n.11. The ALJ relied on the VE's opinion to determine whether, "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (Tr. 28.) In doing so, the ALJ correctly applied "the four factors identified by Congress—physical ability, age, education, and work experience." *Heckler*, 461 U.S. 461-62. After finding that the VE's testimony was entitled to "great weight," the ALJ determined that she was indeed capable of performing multiple jobs existing in significant numbers. (Tr. 29.) Again, Plaintiff does not dispute that this finding is supported by substantial evidence. In short, there is substantial evidence to support the ALJ's decision that Plaintiff was not disabled from the date of her most recent application to the date of the ALJ's decision—when Plaintiff was about four months from her 55th birthday.[14]

---

[14] In making his Step Five finding, the ALJ specifically noted that he considered Plaintiff's age, along with her other vocational factors. (Tr. 29.) Plaintiff's application papers stated her date of birth, and Plaintiff testified at the hearing that she was 54. (Tr. 40.) In his written decision, the ALJ stated Movant's birthday (with day, month, and year) and noted that she "was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application

Citing agency policy, Plaintiff argues that because she demonstrated "additional vocational adversities," the ALJ's failure to use the next higher age category was not supported by substantial evidence.  (Docket No. 9, at 6-7.)  Plaintiff identifies the following additional adversities: education below high school level; unskilled past work; past work in an isolated industry; limited work history; multiple physical impairments; and psychological impairments. (*Id*.)

Under the interpretation provided by HALLEX II-5-3-2, ALJs should take a "sliding scale" approach in deciding which age category to use.[15]  HALLEX II–5–3–2, "Application of the Medical-Vocational Guidelines in Borderline Age Situations" (effective Nov. 2, 1993), https://www.ssa.gov/OP_Home/hallex/II-05/II-5-3-2.html (last visited March 14, 2018).  Use of the higher category is "not automatic."  *Id*.  The "claimant must show progressively more additional vocational adversity(ies)—to support use of the higher age—as the time period

---

was filed (20 C.F.R. § 416.963)."  (Tr. 28.)  Although he referred to Plaintiff's age at the time she filed her application, it is clear from the ALJ's written decision that he knew he was determining her disability status through the date of his decision, January 29, 2015.  (Tr. 17 (noting that the decision "addresses the claimant's allegations of disability from November 28, 2012 to the present.)  The ALJ also cited the pertinent regulation regarding the age categories, § 416.963 (Tr. 28), which includes the subsection addressing borderline age (although he did not specifically cite to subsection (b)).  *See Lockwood*, 616 F.3d at 1072 (holding that the ALJ should be presumed to have considered the older age category where, among other things, she "cited to 20 C.F.R. § 404.1563, which prohibited her from applying the age categories mechanically in a borderline situation").  On the record here, there is no basis to doubt whether both the ALJ and the VE were aware of and considered the Plaintiff's age.

[15] Plaintiff cites POMS DI 25015.006 ("Borderline Age") in support of her "additional adversities" argument.  (Docket No. 9, at 6-7.)  However, the version of the borderline age POMS that is available online reflects an effective date of July 6, 2017.  *See* POMS DI 25015.006, Borderline Age, https://secure.ssa.gov/poms.nsf/lnx/0425015006 (last visited March 15, 2018).  It is unclear whether or not this is the same as the version that was in effect at the time of the ALJ's decision.  Because HALLEX II-5-3-2 was in effect at the time and also refers to the "additional vocational adversities" analysis, Plaintiff's argument will be considered in the context of the then-applicable HALLEX interpretation.

between the claimant's actual age and his or her attainment of the next higher age category lengthens." *Id.*

Given that Plaintiff relies on the Commissioner's internal policy statements in support of her argument, it should be noted that Plaintiff did nothing to meet her burden under that policy to show that she suffered from "progressively more" additional adversities as she approached the next age category.  In fact, Plaintiff's counsel did not raise the issue of her age at all, either before the ALJ or the Appeals Council.  The "additional adversities" she now emphasizes are circumstances and conditions that were considered by the ALJ and addressed in his decision. For example, as to Plaintiff's mental impairments, the ALJ took those into account in determining her RFC and noted that the RFC "more than considers" her mental health symptoms.  (Tr. 26.)  The ALJ's RFC also took into account Plaintiff's additional physical limitations, which is why she was found to be unable to perform the full range of light work (and why Grid Rule 202.10 could not be applied to direct a finding of not disabled).  (Tr. 28.) Likewise, the vocational expert took into account Plaintiff's age, education, work history, and physical abilities in concluding that there were "a relatively wide range" of jobs that she could do.  (Tr. 64.)  Plaintiff's use of the "additional adversities" terminology for circumstances and factors that the ALJ considered does not alter the conclusion that the ALJ's decision is supported by substantial evidence.  *See Huigens v. Soc. Sec. Admin., Comm'r*, No. 17-11682, 2017 WL 6311683, at *4 (11th Cir. Dec. 11, 2017) (noting that "the factors already relied upon to determine the claimant's RFC are insufficient to show additional adversities creating a lesser ability to adapt"); *Lockwood*, 616 F.3d at 1072 (concluding that "the ALJ did not 'apply the age categories mechanically' because the ALJ 'evaluat[ed] the overall impact of all the factors of

[the claimant's] case' when the ALJ relied on the testimony of a vocational expert before she found [claimant] was not disabled").

For these reasons, the ALJ did not err in failing to explicitly acknowledge or analyze Plaintiff's borderline age situation.   In any event, even assuming that the ALJ committed a procedural error in failing to do so, any error was harmless.

## D.   Harmless Error Analysis

As the Fifth Circuit has observed: "Procedural perfection in administrative proceedings is not required."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (applying harmless error analysis in the disability benefits context).   "The ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility."  *Clary v. Barnhart*, 214 F. App'x 479, 482 (5th Cir. 2007) (emphasis in original) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994)).[16]

Plaintiff must show that she was prejudiced as a result of any error by the ALJ.  *See Brock v. Chater*, 84 F.3d 726, 729 (5th Cir.1996) ("We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges.").   A "court will not vacate a judgment unless the substantial rights of a party have been affected."  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (quoting *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988).  "[P]rocedural improprieties … will therefore constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJs decision."  *Morris*, 864 F.2d at 335.

---

[16]  In *Falco*, the Fifth Circuit stated: "That [the ALJ] did not follow formalistic rules in her articulation compromises no aspect of fairness or accuracy that her process is designed to ensure."  27 F.3d at 164.

Remand is required only when there is a "realistic possibility" that the ALJ would have "reached a different conclusion" absent the procedural error. *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010).  Put another way, prejudice is shown where there is reason to believe that, but for the ALJ's error, there might have been a different result. *See Ripley v. Chater,* 67 F.3d 552, 557 n.22 (5th Cir.1995).

Plaintiff does not directly address the harmless error issue.  Plaintiff does argue that, if the ALJ had applied the correct mode of analysis, the Commissioner's Grid Rules "would direct a finding of 'disabled' in this case if the higher age category is applied *before ever arriving at consideration of* [the available] *jobs*."  (Docket No. 12, at 3; emphasis in original.)   In other words, Plaintiff argues that the ALJ should never have considered the VE's testimony regarding the availability of other jobs.[17]

Plaintiff's argument fails to establish that she was prejudiced by any procedural error.  There is virtually no possibility that the result in her case would be different on remand.  Indeed, a different result would be very strange.  The record shows that there is substantial evidence—including expert medical and vocational opinions—to support the ALJ's finding that Plaintiff could at the time of the decision perform various jobs, notwithstanding her age and other circumstances.  This is undisputed.  Put simply—at the time of the ALJ's decision—Plaintiff was *in fact* not disabled within the meaning of the Social Security Act, which "provides disability benefits *only* to persons who are unable 'to engage in any substantial gainful activity by reason

---

[17] As illustrated by the discussion of the amended HALLEX and POMS policy instructions, *see supra* n.13, it is far from clear that Plaintiff is correct in stating that the ALJ in this case should have first considered the borderline age issue before determining whether or not she was disabled at her chronological age.

of any medically determinable physical or mental impairment.'"[18]  *Heckler v. Campbell*, 461 U.S. 458, 459–60 (1983) (quoting 42 U.S.C. § 423(d)(1)(A)) (emphasis added).

There is no merit to Plaintiff's implicit suggestion that the Commissioner on remand could—or should—ignore the vocational expert evidence showing that Plaintiff was not disabled and instead direct a finding of disability.[19]  Nor has Plaintiff shown any reason to believe that remanding this case would produce such an unseemly result.  *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result.")

Because Plaintiff has failed to show prejudice as a result of the ALJ's alleged procedural error, any error was harmless and does not support reversing the ALJ's decision and remanding for further administrative proceedings.  *See Brock*, 84 F.3d at 729 (refusing to reverse "where the claimant makes no showing that he was prejudiced" by the alleged deficiencies).

## III. CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendant's Motion for Summary Judgment (Docket No. 10) be GRANTED, that Plaintiff's Motion for Summary Judgment (Docket No. 8) be DENIED, that the Commissioner's decision be AFFIRMED, and that this action be DISMISSED.

---

[18] As the Eleventh Circuit has explained in addressing similar circumstances: "Even assuming without deciding that the ALJ's finding that [claimant] was a person closely approaching advanced age was erroneous, that error was harmless because substantial evidence (e.g., the VE's testimony and [claimant's] RFC) supported the finding that other jobs were available that [claimant] could perform."  *Miller*, 241 F. App'x at 635 n.1 (citations omitted).

[19] As the court observed in the *Hayes* case, while the ALJ did not mechanically apply Plaintiff's age category to find her not disabled based solely on the Grid Rules, "Plaintiff's argument . . . seems to suggest that the ALJ should have placed her in the older person category and then mechanically apply the grids to find that she is disabled."  *Hayes*, 2009 WL 481473, at *3.  As the court tersely noted: "This is without merit."  *Id.*

## **NOTICE TO THE PARTIES**

The Clerk shall send copies of this Report and Recommendation to the parties who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on March 16, 2018.

Peter E. Ormsby
United States Magistrate Judge

32